Hillsborough, }
Nov. 5, 1924. }

JAMES A. WELLMAN & a. v. LEO BAYLES REILLY & a.

When a statute authorizing the execution of certain classes of contracts in behalf of a city contains a proviso that the party to whom a contract is awarded shall furnish proper surety for its faithful performance, such a contract, entered into without the furnishing of surety, is void, and its performance may be forbidden by injunction.

BILL IN EQUITY, for the rescission of a written contract between the city of Manchester and the defendant Reilly, and for an order enjoining its further performance. The contract was made and executed on the part of the city by the director of the department of public works with the written approval of the mayor. By the terms of the contract Reilly, a consulting engineer, undertook to prepare preliminary studies, specifications, contract drawings, forms of proposals and contracts and estimates of cost for the construction of the Amoskeag and McElwain bridges and their approaches; also to supervise the work and issue certificates of payment; his compensation to be 6 per cent of the estimated cost, payable in partial payments, 25 per cent upon completion of the preliminary studies, 60 per cent upon completion of specifications and general working drawings and the balance in monthly instalments based upon the percentage of work done, final

payment to be made upon completion of the work. The contract further provided for the reimbursement of the defendant for the cost of transportation and living incurred by him and his assistants while traveling in discharge of duties connected with the project. The contract was made January 13, 1921. On January 22, Reilly submitted to the mayor estimates under which the Amoskeag bridge was to cost $468,880, and the McElwain bridge $1,031,856. At the same time he presented a claim for $22,511.04 as his commission then due. By a bill introduced in the legislature January 12, approved January 27 (Laws 1921, *c.* 202), the department of public works was abolished, and a department of highways for the city of Manchester created and invested with the powers, so far as here material, which under Laws 1917, *c.* 350, had been possessed by the department of public works. The plaintiffs, having been appointed commissioners of the department of highways, notified Reilly on February 2 to discontinue work, and on February 8 formally repudiated the contract.

The question whether Reilly is barred from recovery on the contract upon the reported facts is transferred by *Sawyer*, J., as of legal importance, in advance of further action. These facts present questions, (1) as to the validity of the contract, which is denied because of the failure of Reilly to furnish surety as required by Laws 1917, *c.* 350, *s.* 4, and because of alleged fraud in securing the approval of the mayor; (2) as to the authority of the city to make the contract, which is contested because of inadequate appropriations, and because the contract contemplated expenditures in excess of its debt limit.

The defendant Reilly alone answered to the bill and for convenience will be referred to in the opinion as the defendant.

*Tuttle, Wyman & Starr, Thomas J. Bois* and *Timothy F. O'Connor* (*Mr. Wyman* orally), for the plaintiffs.

*Lucier & Lucier,* for Verette.

*Kerwin & Reilly* (of Massachusetts) and *Robert W. Upton* (*Mr. Upton* orally), for Reilly.

SNOW, J. The sole authority of the director to bind the city by contract is contained in Laws 1917, *c.* 350, *s.* 4, which provides: "The director shall have full charge, supervision, management and control of the building, constructing, repairing and maintaining of all highways . . . ; he shall have the expenditure of all appropriations which

the board of mayor and aldermen shall from year to year vote for such purposes, with the approval of the mayor, and all bills and pay-rolls for expenditures from the appropriations voted from year to year by said board of mayor and aldermen for such purposes shall be certified to by the director and approved by the mayor before the same are paid by the city treasurer. . . . The director is hereby authorized to provide for the furnishing and delivering of supplies and the performance of any work contemplated in this act by contract, and in so doing to call for proposals for furnishing and delivering such supplies or doing such work and to make a contract therefor in the name and behalf of said city *provided* such contract shall first be approved by the mayor, and the party to whom the contract is awarded shall furnish proper surety for the faithful performance of said contract, *provided however*, that in the employment of labor, citizens of Manchester shall be given preference, and in the making of contracts such preference shall be stipulated for when practicable; . . . The director shall have full charge and control of the engineers department and shall have in charge the performance of all duties heretofore pertaining to the office of engineer; he shall appoint one competent person to act as superintendent of highways, one competent person to act as superintendent of sewers and one competent person to act as superintendent of street cleaning; he shall establish a schedule of grades or relative positions to include all superintendents, subordinate officers, agents, clerks and all other persons who are employed or may be employed in carrying on the work contemplated under this act, and he shall for the carrying out of the purposes of this act have all the powers now by law vested in the board of public works and the various city departments and officials of said city now having control of the matters covered by this act and he shall have the authority to employ, appoint or hire, to dismiss or discharge such superintendents, subordinate officers, agents, clerks and other persons as he may deem expedient."

The plaintiffs concede that the authority here conferred upon the director includes authority to contract for the construction of bridges, but contend that the supposed contract with the defendant Reilly is void for the want of a surety. The defendant on the other hand contends (1) that the provision requiring the approval of the mayor and surety for the performance of the contract is limited to contracts for furnishing and delivering supplies or doing work of sufficient importance to warrant a call for proposals, and that the authority conferred upon the director to call for proposals is permissive and

not mandatory; (2) that at least the provision requiring the furnishing of proper surety was permissive and not mandatory; (3) that independently of the express provision as to contracts, the contract in question was authorized (a) by the later provision of the statute giving the director full charge of the engineers department and authority "to employ, appoint or hire, to dismiss or discharge such superintendents . . . and other persons as he may deem expedient," (b) by the provision clothing the director with "all the powers now [1917] by law vested in the board of public works and the various city departments and officials of said city now having control of the matters covered by this act." Under the latter (3b) defendant relies upon Laws 1911, c. 359, s. 3, which conferred upon the board of public works "all the powers by law vested in the board of street and park commissioners and the various city departments and officials of said city now [1911] having control of the matters covered by this act," and Laws 1893, c. 264, s. 1, which in turn gave the board of street and park commissioners "full charge, management, and control of the building, constructing, repairing, and maintaining of all the streets, highways, lanes, side-walks, and bridges .. . . in said city of Manchester," giving said board for such purposes "all the powers now [1893] by law vested in the board of mayor and aldermen, the city councils, and the highway surveyors of the various highway districts of said city."

The provision, Laws 1917, c. 350, s. 4, giving the director the general charge of the engineers department, and authority to "employ, appoint or hire, to dismiss or discharge such superintendents, subordinate officers, agents, clerks and other persons as he may deem expedient," cannot be held, in disregard of provisions expressly governing the making of contracts for the purchase of materials and the performance of work, to authorize a written contract with a consulting engineer to design and supervise the construction of bridges to cost approximately $1,500,000 and carrying possible compensation of $90,000; nor does the defendant stand any better under the provision which, by successive statutory references, clothed the director with the general powers which in more primitive days had been vested in "the board of mayor and aldermen, the city councils, and the highway surveyors of the various highway districts." To adopt the defendant's contention as to either of these positions is to hold that under the contract the defendant was an employee in the sense that a city engineer or a superintendent of highways is an employee. Such an employment is a stipulation for personal services,

whereas the contract here manifestly contemplates the services of draftsmen, engineers, helpers, etc. That such was the intention is evident not only from the express provision for reimbursement for transportation and living costs of "his assistants" as well as of himself, but from the very character and extent of the work contracted for. Nowhere in the contract are the personal services of the defendant expressly promised. For anything that appears in the contract it might be performed without them. If the service was adequate and the supervision competent, it would have been no defense in a suit for the recovery of the stipulated price that the work had been carried out by service and under supervision other than his own. The contract was for the performance of the work contracted for in its entirety and not for the employment of the defendant for wages or salary, which is the significant element in the relation of the city to its employees. The defendant was not an employee in any ordinary sense of the term.

It follows that the defendant must prevail if at all upon one of his first two positions, which involve the construction of the clause authorizing and limiting his power to contract (Laws 1917, *c.* 350, *s.* 4), viz.: "The director is hereby authorized to provide for the furnishing and delivering of supplies and the performance of any work contemplated in this act by contract, and in so doing to call for proposals for furnishing and delivering such supplies or doing such work and to make a contract therefor in the name and behalf of said city *provided* such contract shall first be approved by the mayor, and the party to whom the contract is awarded shall furnish proper surety for the faithful performance of said contract. . . ."

As a ground for the contention that the application of the proviso is limited to contracts made upon proposals it is urged that the requirement of the mayor's approval and of proper surety would be a cumbersome and expensive procedure in view of the number of contracts for labor and materials which would be involved if applied to small purchases and day labor. Provision is made earlier in this section for the payment of bills and pay-rolls from appropriations made from year to year for authorized purposes upon certification of the director and approval of the mayor. It is improbable, therefore, that the clause under consideration was intended to apply to the current pay-rolls or to cash purchases of materials. The supplies and work here intended were such as are logically the subject of a written contract of an executory character rather than the purchase of supplies or labor capable of present delivery or performance.

In support of his construction of this clause the defendant places his principal reliance, however, upon the history of its provisions. Laws 1893, *c.* 284, *s.* 1, provided: "Said board [board of street and park commissioners] is authorized to provide for the performance of any of said works by contract, and, in so doing, to call for proposals for doing such work, and to make a contract therefor in the name and behalf of the city with the lowest responsible bidder who shall furnish proper surety for the faithful performance of his contract; but no such contract shall provide for the expenditure of any sum of money greater than the amount appropriated for such purposes by the city councils." Laws 1911, *c.* 359, *s.* 3, provided: "Said board [board of public works] is hereby authorized to provide for the furnishing and delivering of supplies, and the performance of any work contemplated in this act by contract, and in so doing, to call for proposals for furnishing and delivering such supplies or doing such work, and to make a contract therefor in the name and behalf of the city with the lowest responsible bidder, *provided,* it shall be deemed for the best interest of the city, who shall furnish proper surety for the faithful performance of the contract, *provided however* that in the employment of labor, citizens of Manchester shall be given preference." The defendant contends that the requirement for a surety in each of these earlier statutes was limited to contracts awarded under proposals and that no modification of this requirement was intended in Laws 1917, *c.* 350, *s.* 4. We do not follow the defendant in his construction of these earlier statutes. The essential provision in each of these statutes was to authorize the respective boards *to contract;* in that of 1893 for the performance of work, and in that of 1911 for the furnishing of supplies and the performance of work. It was the duty of the board in each instance to secure for the city the most favorable terms. The authority to call for proposals was bestowed as an incidental means of performing this duty. There was no logical reason for authorizing the respective boards to require a bond for the performance of a contract awarded upon a call for proposals that did not apply with equal force in the case of a contract of like magnitude and importance awarded without proposals. It is therefore unlikely that the legislature intended such a distinction.

It is clear, as the defendant contends, that the director's authority to call for proposals under the 1917 statute, as was the case under the earlier statutes, is discretionary. It is equally clear therefore that, if the proviso in the 1917 statute relates only to the purchase of such materials and the contracting for such service as the director chooses

to submit for competitive bids, the proviso affords no protection to the city against an incompetent or a designing official. The growth of the municipality, and the consequent occasion for greater financial outlay, together with the commitment of the contracting power to a single individual, tend to support the conclusion that it was the legislative intention, Laws 1917, *c.* 350, *s.* 4, to impose, as conditions precedent to the validity of executory contracts of the character here involved, both the approval of the city's chief executive officer and proper surety for performance.

It seems to be conceded by the defendant that the statute makes the approval of the mayor a condition precedent to the validity of a contract made upon proposals. Manifestly there is no less need of such approval to a like contract made without competitive bids. The requirement of proper surety is tied to the requirement of such executive approval by plain and unequivocal language. Had it been the legislative intention to make the requirement of a bond permissive, it is fair to assume that such requirement would not have been incorporated in a proviso with a condition precedent, but would have been treated separately, or that the distinction would otherwise have been made plain by the use of appropriate language. The words used in the context adopted seem to be plain and unambiguous. A statute is ordinarily to be construed according to the plain and natural import of its words. *Attorney-General* v. *Hayes,* 77 N. H. 358, 359; *Floyd* v. *Verrette,* 79 N. H. 316, 317; P. S., *c.* 2, *ss.* 1, 2. It follows that the contract here in question is invalid for the want of proper surety and that no recovery can be had thereon. This conclusion makes it unnecessary to consider the plaintiffs' further contentions.

Whether the defendant at the request of the director performed any services which were accepted and used by the city for which he can recover upon *quantum meruit* is a question which is not raised by the case and has not been considered.

*Case discharged.*

All concurred.